**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **ASHER HOMES, LLC,** | ) | **Case No. 25-10067-T** |
| | ) | **Chapter 11** |
| | ) | |
| **Debtor.** | ) | |

**UNITED STATES TRUSTEE'S SUPPLEMENT TO MOTION**
**TO CONVERT CASE TO CHAPTER 7 AND REQUEST FOR HEARING**

Ilene J. Lashinsky, United States Trustee for Region 20 ("U.S. Trustee"), pursuant to 11 U.S.C. § 1112(b), supplements her Motion to Convert Case to Chapter 7 based on Asher Homes, LLC's ("Debtor") failure to comply with the terms of the Stipulation entered into between the U.S. Trustee and the Debtor, for continued gross mismanagement of the estate of the Debtor, continued failure to file Monthly Operating Reports, failure to pay quarterly U.S. Trustee fees, and diminution in value of the estate, and requests that this Court set the Initial Motion (as defined below) and this Supplement for hearing at its earliest convenience. In support of this supplement, the U.S. Trustee submits as follows:

1. This case was filed on January 20, 2025. *See* Dkt. No. 1.

2. On May 7, 2025, the U.S. Trustee filed her Motion to Convert Case to Chapter 7 ("Initial Motion"). *See* Dkt. No. 110.

3. On June 20, 2025, the Court entered an Order Approving Stipulation Regarding the United States Trustee's Motion to Convert Case to Chapter 7 ("Order Approving Stipulation"). *See* Dkt. No. 184.

4. In that Order Approving Stipulation, the Debtor explicitly agreed to undertake certain tasks. Many of those stipulated actions have not been taken or have been violated.

5. Specifically, the Debtor has not filed a Monthly Operating Report covering the period from January 20, 2025 through January 31, 2025.

6. Nor has the Debtor filed all Monthly Operating Reports by the 21st of each month for the previous month. In fact, the Debtor has not timely filed a single Monthly Operating Report and has only filed delinquent reports upon request by the U.S. Trustee. Currently, Monthly Operating Reports for the partial month of January 2025, and the months of June 2025, January 2026, February 2026, March 2026, and April 2026 are delinquent.

7. The Debtor has not filed Official Form B426s that become due every six months as contemplated by Fed. R. Bankr. P. 2015.3.[1]

8. On December 5, 2025, the Debtor made an unauthorized payment of $3,000 to its retained accountant in this case without court approval, in violation of the Order Approving Stipulation.

9. The Debtor has failed to amend its Schedules to provide values for Debtor's box truck, van, and accounts receivable, in violation of the Order Approving Stipulation.

10. The Debtor has failed to amend its Statement of Financial Affairs to provide gross revenue for 2024, in violation of the Order Approving Stipulation.

11. The Debtor's management has continued to engage in gross mismanagement with supplemental details provided herein, which is cause for conversion pursuant to 11 U.S.C. § 1112(B)(4)(B).

12. The Debtor has continued its failure to file Monthly Operating Reports, which is cause for conversion pursuant to 11 U.S.C. § 1112(b)(4)(F).

[1] While the Debtor filed its initial Official Form B426 on July 20, 2025, a subsequent report was due to be filed in January 2026 and was not filed.

13. The Debtor is delinquent on payment of the U.S. Trustee fees for the first quarter of 2026 in violation of the Order Approving Stipulation and which is cause for conversion pursuant to 11 U.S.C. § 1112(b)(4)(K).

14. Additionally, there has been a substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation, which is cause for conversion pursuant to 11 U.S.C. § 1112(b)(4)(A).

15. Because there has been a substantial and continuing diminution of the estate and the absence of a reasonable likelihood of rehabilitation, and due to the Debtors continued failure to comply with the stipulations it agreed to with the U.S. Trustee which were approved by this Court, the U.S. Trustee requests that the U.S. Trustee's Initial Motion be set at the Court's earliest convenience as contemplated by the Order Approving Stipulation.

**Debtor's management has continued to engage in gross mismanagement.**

16. In her Initial Motion, the U.S. Trustee established the legal standard for gross mismanagement as cause pursuant to 11 U.S.C. § 1112. The Debtor's management has continued to grossly mismanage the Debtor's estate since the filing of the Initial Motion.

17. In the Initial Motion, the U.S. Trustee discussed the responsibilities of Debtor's management in filing financial reports and the failure to do so constituting gross mismanagement.

18. The Debtor has not filed a single Monthly Operating Report in a timely manner and Monthly Operating Reports have not been filed for the partial month of January 2025, or for the full months of June 2025, January 2026, February 2026, March 2026, or April 2026.

19. The failure to file these reports constitutes gross mismanagement and is cause to convert the case to a chapter 7 case pursuant to 11 U.S.C. § 1112(b)(4)(B).

**Failure to File Monthly Operating Reports**

20. As discussed in the Initial Motion and herein, the Debtor has not timely filed a single Monthly Operating Report in this case.

21. As of the time of this filing, no Monthly Operating Reports have been filed for the partial month of January 2025, or for the full months of June 2025, January 2026, February 2026, March 2026, or April 2026.

22. These facts establish cause pursuant to 11 U.S.C. § 1112(b)(4)(F) to convert this case to a chapter 7 case.

**Failure to Pay U.S. Trustee Fees**

23. Even though the Debtor has not filed Monthly Operating Reports for any period in the first quarter of 2026, the U.S. Trustee has assessed a fee of $250 to the Debtor.[2]

24. The Debtor stipulated in the Order Approving Stipulation that it will pay all future U.S. Trustee fees by their due date. However, the Debtor is delinquent and has not paid those assessed U.S. Trustee fees.

25. 11 U.S.C. § 1112(b)(4)(K) provides that "failure to pay any fees or charges required under chapter 123 of title 28" of the United States Code is cause for dismissal or conversion.

26. U.S. Trustee fees are established in 11 U.S.C. § 1930. Section 1930 is part of Chapter 123 of Title 28.

27. The Debtor's failure to pay U.S. Trustee fees for the first quarter of 2026 is cause pursuant to 11 U.S.C. § 1112(b)(4)(K) to convert this case to a case under chapter 7.

[2] The estimated fee is the minimum quarterly fee and will be adjusted upward if appropriate based on disbursements once Monthly Operating Reports are filed.

**Debtor's Estate Has Experienced a Continuing Loss and Substantial Diminution During the Pendency of this Case and There Is No Reasonable Likelihood of Rehabilitation.**

28. 11 U.S.C. § 1112(b)(4)(A) provides cause for dismissal or conversion of a chapter 11 case if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." The issues of substantial or continuing loss or diminution to the estate as well as the absence of a reasonably likelihood of rehabilitation are part of a two-pronged inquiry.

29. Continuing diminution or loss to the estate may be indicated by negative cash flow or declining asset values. *In re C M Heavy Mach., LLC,* 671 B.R. 309, 323 (Bankr. E.D. Okla. 2025). "It is not necessary that losses to the estate be large. All that need be found is that the estate is suffering some diminution in value. The Court must focus on the Debtor's financial history and determine whether a pattern of decline exists." *Id*. (internal quotations and citations omitted).

30. Erosion of equity which is the "only real hope" for unsecured creditors due to accruing and unpaid interest has been found to be a continuing loss to or diminution of the estate. *In re Avis*, No. 07-13481-SSM, 2008 Bankr. LEXIS 4005, *6-7 (Bankr. E.D. Va. Nov. 13, 2008). Additionally, where a debtor generates no income because there is no on-going business and cannot pay for debtor's expenses, the first prong under § 1112(b)(4)(A) has been satisfied. *In re Plaza Antillana, Inc.*, No. 13-10013 (ESL), 2014 Bankr. LEXIS 634, *30 (Bankr. D. P.R. Feb. 14, 2014).

31. The second part of the test is whether there is any reasonable likelihood that the debtor's estate may be rehabilitated. *Id*. at 324. "Generally, a debtor must be able to stem its losses, and reestablish its financial affairs 'on a firm, sound basis' within a reasonable period of time. This means that the debtor must generate sufficient funds to service debt plus interest, pay administrative costs, and pay fixed costs and expenses." *In re C M Heavy Mach., LLC,* 671 B.R. at 323. (internal quotations and citations omitted).

32. "Rehabilitation means to reestablish a business…rehabilitation does not include liquidation." *In re Plaza Antillana*, 2014 Bankr. LEXIS 634, *31. "The purpose of Section 1112(b)(1) is to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *Id*.

33. "A debtor who is unable to service its debt at the outset of the case and remains unable to do so for the foreseeable future does not have a reasonable likelihood of rehabilitation." *Id.* at *33 (quoting *In re Creekside Senior Apts., L.P.*, 489 B.R. 51, 62 (B.A.P. 6th Cir. 2013).

34. In its Schedules which were filed on the Petition Date, the Debtor listed 24 parcels of residential real estate as assets of the Debtor's estate. The cumulative scheduled value of the 24 parcels was $12,716,760.00. *See* Dkt. No. 1.

35. In those same Schedules, specifically Schedule D, the Debtor identified secured debts owed by the Debtor on those 24 parcels of real estate, totaling $10,736,096.37. *Id*.

36. On June 24, 2025, the Debtor filed its Amended Schedules and the value of the 24 parcels remained the same as did the secured debt owed by the Debtor on the 24 parcels. *See* Dkt. No. 148.

37. According to the Debtor's Schedules and Amended Schedules, which were signed under penalty of perjury, there was approximately $2 million in equity in the 24 parcels of real estate.

38. The Debtor's designated representative has testified under oath in various hearings in this bankruptcy that there will be sufficient equity in the properties to provide a return to unsecured creditors.

39. Over the course of this case, the Debtor has filed four sale motions which have been granted.[3] Through those sale motions, the Debtor has obtained approval to sell 17 of the 24 parcels of real estate plus one parcel of real estate in which Debtor had granted a deed in lieu of foreclosure to the lender.

40. In each of those sale motions, the Debtor has obtained Court approval to sell each property for only enough to satisfy secured creditors.[4]

41. Through those sales, over $1.1 million of the equity in the properties as reflected in the Schedules and Amended Schedules has evaporated.

42. In the four sale motions which have been granted with cumulative sales totaling over $8.5 million, only approximately $16,000 has flowed beyond the first lienholder for the availability of junior lienholders and no excess funds have been recovered for unsecured creditors.

43. By the U.S. Trustee's estimation, this has left junior lienholders holding more than 30 secured claims in the aggregate amount of at least $370,000[5] with no recourse against proceeds on their secured claims.[6]

44. In the sale motion relating to the property located at 6640 E. 127th Place South, Bixby, Oklahoma (Dkt. Nos. 129 and 196), the Debtor obtained approval to sell the real estate for

---

[3] The most recently filed Sale Motion filed herein at Dkt, No. 406 on May 27, 2026, is not included in this analysis, but the U.S. Trustee submits that based on the face of that pleading, the properties involved in that Sale Motion are being sold with proceeds flowing in the same manner as the properties discussed herein.

[4] In all but one instance, the proceeds have been sufficient to satisfy only the first-position lienholder with no remaining proceeds available for the remaining junior lienholders.

[5] For some of the undisputed claims identified in the sale motions, amounts of liens or second mortgages are not provided. Therefore, the U.S. Trustee submits that the aggregate amount of junior secured claims that have received nothing on account of their claims is likely higher than $370,000.

[6] The U.S. Trustee has excluded from these counts any secured claims that the Debtor indicated were disputed in any of the sale motions.

$715,000 with proceeds of $715,000 less closing costs and commissions to be paid to Mabrey Bank.

45. According to Debtor's Schedules and Amended Schedules, this property had approximately $204,000 in equity, none of which was realized by the Debtor's estate.

46. In the sale motion relating to the property located at 3708 S. Hemlock, Broken Arrow, OK (Dkt. Nos. 133 and 286), the Debtor obtained approval to sell the real estate for $445,725.53 with $420,000 of the proceeds to be paid to Spirit Bank and $25,725.43 less closing costs available for junior lienholders.[7] The Report of Sale filed at Dkt. No. 373 indicates that $16,081.49 remains after closing costs.

47. According to Debtor's Schedules and Amended Schedules, this property had approximately $70,000 in equity, none of which was realized by the Debtor's estate.

48. In the sale motion relating to the sale of 9 properties identified as the Spirit Bank Properties (Dkt. Nos. 256 and 332),[8] the Debtor obtained approval to sell the 9 parcels of real estate for $3,735,782 with $3,565,782 to be paid to Spirit Bank, $120,000 as a carveout for U.S. Trustee fees and administrative expenses, and $45,000 to be used for closing costs.[9]

[7] The scheduled amount owed to junior lienholders on this property exceeds $26,000.

[8] The specific properties identified in the Sprit Bank sale motion are 3804 S. Hemlock, Broken Arrow, OK, 3704 S. Kalanchoe, Broken Arrow, OK, 3712 S. Hemlock, Broken Arrow, OK, 3109 W. Phoenix, Broken Arrow, OK, 3709 S. Hemlock, Broken Arrow, OK, 3705 S. Hemlock, Broken Arrow, OK, 3701 S. Hemlock, Broken Arrow, OK, 4611 S. Chestnut, Broken Arrow, OK (a property which is not a scheduled asset of the Debtor but which is identified in Debtor's Amended Statement of Financial Affairs as having been transferred to SBK Property Holdings LLC prior to the Petition Date), and 2413 W. Charleston, Broken Arrow, OK.

[9] There is a $5,000 discrepancy in the Net Purchase Price and how proceeds will be distributed in the Order Authorizing Sale (Dkt. No. 332), but the Order specifies that any closing costs exceeding $5,000 per property will come from the Carveout and any reduction in closing costs will increase the Carveout, so regardless, no funds will be available for unsecured creditors.

49. According to the Debtor's Schedules and Amended Schedules, these properties had approximately $575,000 in equity, none of which was realized by the Debtor's estate other than for a carveout for U.S. Trustee fees and professional fees.

50. In the sale motion relating to the sale of 7 parcels of real estate identified as the Mabrey Bank Properties (Dkt. Nos. 337 and 405),[10] the Debtor obtained approval to sell the 7 parcels of real estate for $3,650,000 with $3,625,000 to be paid to Mabrey Bank and $25,000 being used for closing costs.

51. According to the Debtor's Schedules and Amended Schedules, these properties had approximately $321,000 in equity, none of which was realized by the Debtor's estate.

52. Additionally, the Monthly Operating Reports which have been filed show a recurring and continuing loss. As of December 2025, which is the most recent Monthly Operating Report filed by the Debtor, the Debtor has incurred a cumulative loss of $16,871.

53. The diminution in value in this case stems from unsustainable debt servicing. The secured claims of first lienholders have grown over the seventeen months that this case has been pending and have eaten up all of the equity in the properties that have been approved to be sold. This is because the Debtor has no ongoing operations and has not had cash flow from which to service the debt on the properties.

54. As a result, the accrued interest since the Petition Date has been tacked on to the first position secured claims resulting in diminution to nothing of the equity cushion in the 17 properties upon their sale.

---

[10] The specific properties identified in the Mabrey Bank sale motion are 127 E. Latimer St. N., Tulsa, OK, 917 E. 37th St., Tulsa, OK, 1608 W. 114th St., Jenks, OK, 12772 S. 66th E. Ave., Bixby, OK, 18956 E. White Willow Pass, Owasso, OK, 11535 S. Marion Ave., Tulsa, OK, and 6511 E. 127th Pl. S., Bixby, OK.

55. There is no way that the estate can be rehabilitated from the loss of over $1 million in equity that would otherwise have been available to unsecured creditors. The Debtor has no cash flow. It will not be able to service the debt on the remaining parcels of real estate and creditors can expect similar results from the sale of those remaining properties.

56. Each day that this case is in bankruptcy, interest continues to accrue. And there is no business operation with which to stop the bleeding by making post-petition interest payments. The only revenue of the estate has come from the sale of the properties identified herein and proceeds have immediately been paid to first position secured creditors. The Debtor is liquidating all of its assets and has no way to generate cash needed to right the ship or to restore the equity that has been lost over the course of the case.

WHEREFORE, the U.S. Trustee requests that this Court set the U.S. Trustee's Initial Motion and this Supplement for hearing at its earliest convenience and thereafter convert this case to a case under Chapter 7 of the United States Bankruptcy Code pursuant to 11 U.S.C. § 1112(b)(1) and for such other and further relief as the Court deems just and proper.

Dated June 2, 2026.

Respectfully submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

*/s/ Mary E. Kindelt*
Karen Walsh, OBA# 14690
Mary E. Kindelt, OBA No. 21728
PO Box 3044
Tulsa, OK 74101
(918) 581-6670
mary.kindelt@usdoj.gov